I move to the third case this morning, Wade v. Kreisler.  Good morning. May it please the Court, Michael Miller on behalf of the appellants, Harold and Lorraine Wade. I would like to take up jurisdiction first. This Court is jurisdiction to hear this appeal because the Bankruptcy Court timely transmitted the functional equivalent of a Rule 5 petition as required by Federal Rule Appellate Procedure 5. Hamer is distinguishable from this case and does not overrule Turner and Marshall. Hamer didn't touch on functional equivalents and reiterated that mandatory claims processing rules, unlike jurisdictional statutes with timing prescriptions, can be waived or forfeited unless invoked, whereas Marshall and Turner dealt with functional equivalents and held that the Bankruptcy Court transmission was the functional equivalent to meet Rule 5. Here, like Marshall and Turner, the functional equivalent of Rule 5 was complied with since the Bankruptcy Court transmission had sufficient content, which has at no point in this proceeding been challenged by Kreisler. The functional equivalence principle doesn't hinge on Rule 5 being mandatory claims processing or jurisdictional. It hinges on whether the Court holds the functional equivalent filing has sufficient content to meet the rule. It's an equitable exception to the filing requirement, the petition requirement, and it's clear from Hamer and the Supreme Court's decision in Manrique that mandatory claims processing rules, like the filing of a permission for permissive appeal that's at issue in this case, are mandatory and, if not complied with, foreclose the appeal. And it wasn't complied with here, so there cannot be a functional equivalence equitable exception. Your Honor, I don't know if it is an equitable exception. The Supreme Court in Smith v. Berry didn't actually label it that. They labeled it a principle of liberal construction of the rules. The Supreme Court also didn't label it that in Torres, where this functional equivalent principle originates from. I think if the Supreme Court thought it was a functional, excuse me, an equitable exception, they would have clearly labeled it that. Those cases are quite outdated based on the Supreme Court's current jurisprudence on jurisdictional principles and mandatory claims processing rules. And the more recent cases indicate that these equitable exceptions to mandatory claims processing rules, and certainly to jurisdictional rules, are inappropriate. Well, I think that the mandatory claims processing rules are less stern, which we're dealing with here right now, which is Rule 5. Right, but Hamer made clear that although less stern, if they are raised, in other words, if they're preserved, they are, in fact, mandatory and noncompliance is grounds for dismissal. Two points I would like to make real briefly. Number one, Hamer did actually reserve whether mandatory claims processing rules are an equitable exception back to the Seventh Circuit. They did not rule on that. And then when it went back to the Seventh Circuit, the Seventh Circuit said, we're not going to rule on equitable exceptions because there's forfeiture. And then as an added note, you may be aware, right now there's a Supreme Court case called Neutraceutical v. Lambert, and they're actually determining in that case whether mandatory claims processing rules are subject to equitable exceptions. So if this court does want to take the stance that the functional equivalence principle is an equitable exception, I think that, you know, based on what the Supreme Court is going to say in that case, may determine what your position is. However, And the stakes here would be you'd go back to the district court to hear the same issue, and then whoever lost would then bring this back in the same breeze. Yes. The other point I want to state as well as my second point is the only way that you wouldn't comply with Rule 5 in this situation, if the functional equivalent of the bankruptcy court transmission was insufficient. Then I think Hamer could apply. If it was insufficient and what the bankruptcy court transmitted over didn't have enough information to meet Rule 5, which is not the case here, because what was transmitted over had the four-page certification order, the eight-page bankruptcy court opinion, and then it also had the short record. If that was insufficient and then the EPPLE objected, then I think Hamer would be applicable here because then you could say you didn't have sufficient content to meet the Rule 5 and we're objecting and now you have to dismiss. But I think that's the only way Hamer could be applicable here, but it's not because what was brought forward was sufficient and, like I said, Chrysler hasn't objected to that. That presupposes that the functional equivalent rule that was adopted by this court in this context survived Hamer and Manrique. Right. We believe it does because it's distinguishable. And in Hamer, they never mentioned functional equivalents. They didn't mention Torres or Smith. No, but it established the principle very clearly that a mandatory claims processing rule is unalterable and unless forfeited, must be enforced. So if it's raised, it must be enforced. Unalterable language is inescapable here, and that was repeated in the Manrique decision. But that negates the whole purpose of the functional equivalence principle. Right. It essentially overrules the functional equivalence. Our case law on that principle has been utterly displaced by the Supreme Court's subsequent case law. But, Your Honor, the mandatory claims processing doctrine has been around since the 2004 Contrick v. Ryan case, and the principle was the same there. In Contrick v. Ryan, it can be waived or forfeited. But it was not waived or forfeited here. It was raised. Right, right. But I don't think Hamer is bringing anything new to the table. They're just reiterating because the courts... It's reiterating that a mandatory claims processing rule is forfeitable, but if it's raised, it is mandatory and unalterable and must be enforced. The rule was raised here. Yes. Noncompliance with the rule was raised here, so it's been preserved. And so there is no exception, functional equivalence or otherwise. The functional equivalence doctrine has been completely displaced by Hamer and Manrique. Mr. Miller, do I understand correctly your position is that the bankruptcy court clerk could have handed you this package of materials, and if you had walked them upstairs here and filed them, that that would be sufficient? If it was the same exact materials? Same documents, yeah. If the court ruled that it was sufficient to meet Rule 5, yes, it could meet it. It's a principle of liberal construction to allow this court to get to the merits and not let it get dismissed on technicalities. But the difference, in essence, is between who delivered the package to the clerk's office? For relevance of how the principle applies, it's what is delivered, not who delivers it. So what was delivered has to be sufficient, which Chrysler has not objected to that at any point, and that's the only way I know we disagree on this, that Hamer would apply.  Yes. Mr. Miller here, and in particular, I was wondering, under your position, how is a creditor supposed to know whether the property it's going after is the debtor's property or is in the bankruptcy estate? Well, they would be able to go to 362A, and they could, well, it depends on what the piece of property is. So if the piece of property is a house, then you would have to look at what the confirmation order says. Every jurisdiction is different on what determines what's property of the state or not. So in the Seventh Circuit, under a case called Heath, only property that's not necessary for fulfillment of the plan would not. So if it's not necessary for fulfillment of the plan, then it's… Here's my problem. Yes. Under what you call the minority rule, the stay basically expires as to virtually everything within 30 days. Yes. Under the rule that you're advocating, a creditor is very much at risk by not knowing which property is covered by the expired stay and which is covered by the continuing stay. That seems to me a very improbable rule. Well, I don't think it's improbable, especially if you look at it also allows you to go after the debtor personally. So that's pretty clear-cut when you can go after… So you get to make phone calls. Yes. That's not necessarily what this fight is about, though, is it? No, but it shows that there's teeth to our view. Could you address the argument based on 362C3B, which has to do with trustees or other creditors being able to seek a continuation of the stay? Yes, I just want to back up real quick. The other thing the creditors could do is they could come in to confirm which part of the stay was terminated as well. This is all, though, really just about who has to go to the court, right? The bankruptcy court? Yes. Well, yes, a creditor has a right to come in to confirm the absence of the stay to a debtor, a debtor's property or property. And the debtor has the obligation of coming in to seek continuation of the stay under the minority view, correct? The debtor or any party of interest. Right. Yes. So you want to know 362C3B. Okay. Yeah, go ahead. What incentive would the trustee or other creditors have to extend a stay for property of the debtor rather than the bankruptcy estate? Well, the Chapter 7 trustee in that, under the majority view, may not necessarily want to come in and extend the stay if it's protected under the property of the estate, but there's other parties of interest that could come in, such as a non-filing spouse. So a non-filing spouse could come in, and they would have an interest to protect the filing spouse from combative abuses, practices from creditors trying to go after the debtor, such as phone calls, personal lawsuits for in personam, stuff like that. Okay. I'm not tracking with you. Okay. So under that view, a non-filing spouse could come in to move to extend the automatic stay under 362C3B, because they could be a party of interest as well, too. As to property that belongs to the bankruptcy estate? They could come in to extend the stay to all three things, property, property of the estate, or the debtor. Why would they want to do that? Well, if their spouse is in the bankruptcy, and, you know, if they're married and they're commingling income and expenses, they're dependent on the filing debtor's income to pay expenses and to live. So you think that's what 362C3B is about? No, I think that's one of the pieces of 362C3B. The other one is a Chapter 7 trustee, like you had mentioned, or a creditor could try to come in as well to extend the stay. And why would they want to do that with respect to property of the debtor as distinct from the bankruptcy estate? That's what I'm having trouble with. So what you're saying is there's no motivation for a Chapter 7 trustee. That's the argument. I like your response to it. I do. I actually agree with that, Your Honor. But under the minority's view, there's no stay at all. So at least under our view, we're harmonizing a balance between deterring second-time repeat filing debtors and then also protecting creditors because under the minority view, you would have no protection to the property of the estate, and then it would prevent it. No, unless you went into the bankruptcy court and convinced the court that this is a good-faith petition. Did you want to address the First Circuit's opinion in Smith and let us know if we could affirm, in this case, without creating a circuit split? Yes. I think that the Smith court actually, one of the things they got wrong was the plain reading of the 362C3A. So as we all know, if 362C3A plainly gets to our point, then you can't look to legislative history. How does it plainly get to the debtor's property? The way it gets to the property is if you start with the beginning of 362C3A, the first part of the sentence says to stay under subsection A, and that's the subject of the sentence, which is then modified with respect to the following three actions, debt, property securing such debt, and a lease. Then the operative verb shall terminate modifies the scope of the termination of the stay in relation to any of these actions to 362A that have to do with anything with the debtor, a debt, property securing such debt, or a lease. So what you would do is you would look under 362A, which has been modified, and anything that has to do with protecting a debtor or a debtor's property would be terminated, whereas anything that has to do with property and estate would not be terminated. Congress was modifying subsection A in 362C3A, but as you know, they did not modify it under 362C4AI. Under 362C4AI, why did Congress use such simple language to terminate the entire stay on such a similar statute? 364CAI is a repeat filing debtor statute. It was enacted in 2005, and it follows 362C3A right in the statute, and yet they terminated the stay in its entirety under there but did not use the same language under 362C3A. And the reason why is because they were just looking to terminate the stay to the debtor and the debtor's property. I see I've ran into my rebuttal time. I'd like to reserve the remainder of it. All right. Thank you. Good afternoon or good morning. May it please the Court. I guess I would like to start with jurisdiction as well. First of all, I think Hamner or Hammer goes to whether a requirement, a timing requirement, is either jurisdictional or it's a mandatory claims processing rule. And if it's jurisdictional, you can't waive the requirement. In this case, the filing of a petition with this Court. And if it's a mandatory claims processing rule, as far as the timing of filing something or filing a petition for review, that's when functional equivalence comes into play and whether this Court is willing to accept something that has everything that you would have if a proper petition were filed, has all the components, but isn't a petition and doesn't ask this Court to, on your own, to review everything in the lower court, in the bankruptcy court, to see if you want to take a look at this on a direct appeal without this going through a proper lower court, the district court, and then coming to this court the normal way, whether you want to fast track it. But if it's a mandatory claims processing rule and we didn't waive it, which we didn't, the first time that we got the opportunity to bring up the fact that a petition hadn't been filed was when we got the notice to respond to the notice of appeal. And in that, we raised the fact that no petition's been filed, so we're objecting jurisdiction because we don't think the Court has jurisdiction because this procedural step hasn't been followed. So as far as if it's a mandatory claims processing rule, if that's all that this is, Hammer says that if that hasn't been waived, if it's been objected to, which we did, then it can't be overlooked or there can't be a... So you want to go back to the district court and rebrief this? Well, no. And you were right when you made that comment. What's going to be the outcome here? Well, the outcome would be we get sent back to the district court. Essentially, we pull out the jurisdictional argument from our briefs. This appeal on the merits, we're not raising any new arguments. The arguments have been made all over the country. It's either majority or minority. Pick whichever one you like based upon whichever argument you like. Is there any feature of the handling of the petition that has prejudiced you and your client in any way? Prejudicial to myself or my client in any way, no. I don't believe so. Thank you. Okay. Manrique says that harmless error plays no role if there's been a breach of a mandatory claims processing rule. I still think I'm stuck back on humor, which says if it's not waived... That's my point. It has not been waived. It's been preserved. And harmless error analysis, in other words, whether there's prejudice, doesn't matter. Well, this is an argument in your favor, counsel. I understand that, yeah. Throw in your lifeline. I understand that, yeah. Or a shoot down to the district court. Well, indeed. And then an opportunity to climb the ladder once again. To come back up here. I'm sorry. I've lost track of the question at this point. That's okay. We didn't mention Manrique in our jurisdictional order. No, you did not. I'm sorry if I'm surprising you. That's why we're here. But no, I have not reviewed that case. But again, going back to the fact that we did not waive the requirement. And the whole point of the petition is if you get to the point where you're calling these functional equivalents, because in the handbook that's on the website, when you get to functional equivalents, you're willing to call a notice of appeal, something that's filed that has all the requirements of a notice of appeal, a functional equivalent. But then if you get to the point where you're considering everything, and you're willing to say that if something comes up, and they're saying it's the functional equivalent of a petition, then the exception consumes the rule, I guess. That's what I said in my dissent in turn. Yes. The exception consumes the rule. So we have to, if you're going to require a petition, you've got to petition to the court. You're preaching to the choir. I'm sorry. So I'll go on to the merits. As far as majority and minority, if the statute says that if you don't get the stay extended as to the debt or the debtor's property or property of the estate, then the stay expires with regard to all of those. When you file a bankruptcy case, Chapter 7 or 13, in this case it was Chapter 13, all of the debtor's property becomes property of the estate. So if the stay only expires with regard to the debtor or the debtor's property, the debtor really has no other property out there. Well, there are a few exceptions, right? The exemptions? And that are talked about in the First Circuit's opinion and so on. Yes. So you really think this is about the spousal exclusion that was talked about in the Daniel opinion? In this case, the spousal exclusion happens to be relevant because the property that we're going after in this case belongs to the serial filer and doesn't belong to the spouse. Can I ask you a couple of procedural questions, and perhaps Mr. Miller can address this briefly in rebuttal as well? As I understand it, the debtors did go into bankruptcy court and ask for an extension of the stay, correct? They filed a motion for an extension of the stay, but they set it up for February 5th, which was a date that the bankruptcy court was not going to be sitting. And so the motion was stricken rather than ruled on? It was stricken the same day by... How does that work? You would have to ask someone at the clerk's office or in chambers. But on the same date that they filed the motion and set it up, they filed it on the 29th of January, set it for the 5th of February. On the same day that they filed it, someone, I don't know if that's a clerk's office purview or if that's someone in the bankruptcy court's chambers, they struck it from the docket, struck it from hearings, they weren't sitting that date, and notice went out that it was stricken. And what should have happened then was it should have been re-noticed for a different date within that 30 days, and that just didn't happen. I don't know if it got overlooked or... And then, if I understand this correctly, you and your client originally thought you had made a mistake, right? We did. Absolutely we did. In pursuing in the face of what you thought was a stay, and then you decided later on in the briefing that maybe you were entitled to act as you thought you had mistakenly done. Is that right? What happened was we got notice. There had been a prior bankruptcy that we had been actually active in. We filed a claim, proof of claim. That got dismissed voluntarily by the debtors. Before that case actually closed, they had filed this new case. We, for whatever reason, didn't realize there was a new case. Went on in the state court, knowing about the dismissal of the prior case, thinking there was no bankruptcy, got a judgment, filed a memorandum of judgment, which became a lien. When they moved in to 2015, the new bankruptcy, to sell this piece of vacant property, with the memorandum of judgment on file, there was a lien. So we got contacted by the realtor who said, hey, there's a bankruptcy. This memorandum of judgment never should have been filed. You're in violation of the automatic stay. We panicked a little, and I called right away and said, if there's a problem, we'll take care of it. We're very sorry. We don't violate the automatic stay. And then when I looked at the actual dockets, in the 2013 case and the 2015 case, I saw what had happened, and that there was actually no stay, in my reading of the statute and the case law in this district. So I called back up, and then we got into the dispute, where they're saying there is a stay, and I'm saying there's not a stay. So that culminated in them filing their motion for sanctions for us violating the stay, and filing our motion to clarify whether or not there was a stay. And that was heard in Judge Hunt's June 6th order, which is what we're appealing, what the appeal is about, where she decided that she was going to choose the minority view and find that there was no stay and no violation, and here we are. So that's how we got here. And like I said, there's the minority view and the majority view. We're not making new arguments. I think the minority view is the better choice. I think the statute's written poorly. It's hard to go by statute, and I think the First Circuit had it right when they said it's hard to apply rules of statutory interpretation to the statute, which has been written. So you can win on a textual analysis only. I'm sorry? You can win on a textual analysis only. Well, I don't think, like I said, I think the First Circuit was right. In my reading of the First Circuit case was that they said you can't really do a complete textual analysis because the text is so poorly written. We can't apply just the strict rule of statutory construction. So then you have to look at legislative history. You have to look at legislative history and the intent. And I think the intent was to dissuade people from filing these constant Chapter 13s that never have any hope of making it, letting them be dismissed, and then refiling at the, you know, an hour before the sheriff's sale to get a stay and letting that ride out and having the stay in effect until that case gets around to being dismissed. Congress said enough. We're going to give you, on your second case within a year, we're going to give you a 30-day stay. If you can't get it extended for good cause in the bankruptcy court within that 30 days, you're done. And if it's your third filing, you don't get a stay at all. You've got to go into court and have a stay put into effect because we're not going to have these abuses anymore, what they perceived as abuses. I don't know how much of that actually went on, but to the extent that it was a perceived abuse, they were trying to, you know, rectify what they saw as flaws in the bankruptcy court system. Without that being read the way that the minority reads it, I don't think it has any teeth because there is, like the judge said in the First Circuit said, there are exceptions to it, but the fact of the matter is all of the property that you could, that I could see that you could go after as a creditor, that the debtor has at the beginning of a bankruptcy case, is part of the bankruptcy estate. The exemptions that are used to take things out of the bankruptcy estate, in Illinois anyway, are the state exemptions that the creditors can't go after outside of bankruptcy anyway. So there's, like you said, we can make phone calls, but other than just sheer harassment, which is prohibited by other federal statutes, there's nothing that you could really do unless the state expires with regard to everything at the end of that 30-day period. Unless you have other questions, I think, I'll sign off. Thank you. Judge Hamilton had a question for you, I believe. How does a motion get stricken without ruling on it? I believe it was inadvertent. It was just filed with the wrong judge or the wrong day, and the clerk just struck it, and our office never had notice of it. How does that happen? Inadvertence. However, the property of the state still remained protected based off the clear and unambiguous reading of 362C3A, and as you were alluding to, the First Circuit, even though they just went against us, they did eviscerate the whole theory on the spousal exclusion, which means that Chrysler's and the minority's view on 362C3A is surplusage, whereas our view is plain and unambiguous. And notwithstanding, 362C3B, which in my view is just a minor inconsistency, I believe this statute has teeth to it. There's lots of remedies that I've cited in my brief, the amicus brief, where you can go after debtors, debtors' property, you can induce them to pay money, and if they don't pay the money, they can't sue the creditor because they've lost 362K. So for the foregoing reasons, I would ask this court to reverse the bankruptcy court and also hold that as jurisdiction. Thank you. Thanks to both counsel, and the case is taken under advice.